UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **In re:** ) | |
| ) | Case No. 18-36958 (MI) |
| **Parker Drilling Company, et al.,** ) | (Jointly Administered) |
| ) | |
| ) | Chapter 11 |
| **Debtors.** ) | |
| ) | |

**OBJECTION OF THE SECURITIES AND EXCHANGE COMMISSION
TO THE APPROVAL OF THE DEBTORS' DISCLOSURE STATEMENT**

1. The United States Securities and Exchange Commission (the "Commission") objects to approval of the Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Parker Drilling Company and its Debtor Affiliates (Dkt #21) (the "Disclosure Statement") filed by Parker Drilling Company ("Parker Drilling") and its affiliates (collectively, the "Debtors") pursuant to Sections 1125(b) and 524(e) of the Bankruptcy Code and applicable law. 11 U.S.C. §§1125(b), 524(e).[1] In support of its objection, the Commission respectfully states as follows:

**PRELIMINARY STATEMENT**

2. The Commission objects to the approval of the Disclosure Statement on the grounds that: (i) the Joint Chapter 11 Plan of Reorganization of Parker Drilling Company and its Debtor Affiliates (the "Plan") (Dkt. #17) contains provisions that release, exculpate, and discharge the liability of an extensive list of non-debtor third parties, and does not provide an opportunity for claim and interest holders subject to these provisions to consent to such releases in contravention of Section 524(e) of the

---

[1] While some of these issues may appropriately constitute an objection to confirmation, because of the potential waste of time and resources, the Commission believes it is appropriate to raise these objections to the plan at the disclosure stage.

1

Bankruptcy Code and controlling law in the Fifth Circuit; and (ii) the Disclosure Statement lacks adequate information, as required under Section 1125(b) of the Bankruptcy Code, to support the overly broad release provisions.[2]  Moreover, the Plan provides that the limited distribution shareholders could potentially receive is contingent on the shareholder class voting to accept the Plan; if the class votes to reject, shareholders will receive no distribution.  The Debtors seek to impose these releases on all creditors and interest holders, including public noteholders and shareholders, except those who file an express objection.  This requirement places an onerous and unfair burden on parties who may not be represented by counsel, especially individual shareholders, and contravenes Fifth Circuit law.

3. Section 524(e) of the Bankruptcy Code provides that only debts of the debtor are affected by the Chapter 11 discharge provisions. Yet the Plan includes releases that allow non-debtors to benefit from the Debtors' bankruptcy by effectively obtaining their own discharges with respect to potential claims arising from past wrongdoing, including willful misconduct and gross negligence.  The exculpation clause in the Plan is also overly broad.  The release and exculpation provisions are at odds with sound public policy considerations underlying the rights of creditors and investors to pursue legitimate claims against wrongdoers.

4. The Commission urges the Court to deny approval of the Disclosure Statement or, in the alternative, require the Debtors to revise the Plan and Disclosure Statement to provide: (i) that claims arising from willful misconduct and gross negligence will be carved out of the release provisions; (ii) that impaired creditors and interest

---

[2] The Commission reserves its right to object to the lack of a carveout for the Commission from the non-debtor third-party release provisions if such a carveout is not included in the Plan.

holders will not be bound by the release provisions without their affirmative consent; (iii) that the exculpation provision will be consistent with Fifth Circuit precedent; and (iv) that the "deathtrap provision," which states that common shareholders will receive nothing if the common shareholder class rejects the Plan, is deleted or, in the alternative, common shareholders are carved out of the release.

## BACKGROUND

5.  On December 12, 2018, Parker Drilling Company, together with 19 of its affiliates (collectively the "Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. As of the petition date, Parker Drilling had 500,000 shares of preferred stock outstanding and approximately 9,381,316 shares of common stock outstanding held by approximately 1501 holders of record.[3] The common stock is registered with the Commission pursuant to Section 12(b) of the Securities Exchange Act and currently trades on the OTC markets.

6.  The Plan proposes to exchange approximately $695.5 million in liabilities for cash, a new term loan, and new equity of the reorganized Parker Drilling. The Plan also provides for a distribution to common shareholders if the class votes to accept the Plan. However, if the class votes to reject the Plan, then common shareholders will receive nothing.

7.  In part, the Plan provides: (i) that reorganized Parker Drilling will issue new common stock and new warrants, implement a rights offering, and enter into a new

---

[3] Four entities hold 5% or more of the Debtors' common stock: Saba Capital Management L.P. (11.67%); Brigade Capital Management, L.P. (9.00%); Dimensional Fund Advisors L.P. (6.37%); and Whitebox Advisors, LLC (6.00%). The Chairman of the Board, Robert L. Parker, Jr. holds 1.26% and officers and executive directors as a group hold 3.32%.

second lien term loan; (ii) noteholders will receive a pro rata share of 97% of new common stock, the rights offering, new warrants, and the new second lien term loan; (iii) preferred shareholders will receive 1.1% of new common stock and 40% of new warrants; and (iv) if the class of common equity holders votes to accept the Plan, then each shareholder will receive its pro rata share of 1.65% of new common stock and 60% of new warrants, but if the class votes to reject the Plan, then the shareholders will receive no distribution.

8. The release provisions in the Plan propose to release and discharge the liability of numerous non-debtor third parties (the "Released Parties"), including the Debtors' current and former officers, directors, agents, employees, and attorneys, as well as certain lenders, agents and creditors and their current and former directors, managers, officers, equity holders (directl or indirect), members, employees, partners, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors.

9. The release provision at Article VIII.C., of the Plan generally provides that each Releasing Party, as defined in the Plan, is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from a very broad range of causes of action, including actions based on or relating to, inter alia, "any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date."[4] The release provision does not exclude actions based on willful misconduct or

---

[4] In full, the release provision provides:

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to

gross negligence.  And the parties granting the releases are not given a meaningful opportunity to consent, nor are they certain to receive a distribution, let alone consideration specifically in exchange for the releases.  In addition, the exculpation provision provides that the numerous and ill-defined exculpated parties shall have no liability to creditors and interest holders for any acts or omissions taken in connection with the bankruptcy case or consummation of the Plan, with the exception of acts or omissions determined to constitute actual fraud, gross negligence or willful misconduct.

## DISCUSSION

**I.     The Disclosure Statement lacks adequate information, as required under Section 1125(b) of the Bankruptcy Code, to support the releases.**

10.     Section 1125(b) of the Code provides in relevant part that "[a]n acceptance or rejection of a plan may not be solicited . . . from a holder of a claim or

---

assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:

  1. the Debtors, the Debtors' restructuring efforts, intercompany transactions, or the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Plan, the Disclosure Statement or the Rights Offering Procedures;

  2. any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, or the Plan, including the Rights Offering;

  3. the Chapter 11 Cases, the Disclosure Statement, the Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan or the Rights Offering, or the distribution of property under the Plan or any other related agreement; or

  4. any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims related to any act or omission that is determined in a final order to have constituted actual fraud or (ii) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.  *Article VII.C.*

5

interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder. . . a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. 1125(b). Adequate information, in turn, is defined as "information of a kind, and in sufficient detail . . . that would enable a hypothetical investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . ." 11 U.S.C. 1125(a)(1).

11. The Disclosure Statement includes general statements indicating that the releases are integral to the Plan and that the Released Parties and exculpated parties made contributions to the Debtors' restructuring efforts by negotiating and implementing the Plan, agreeing to reductions in the amount of certain claims, and backstopping the rights offering. The Debtors assert that evidence will be presented at the confirmation hearing to demonstrate the propriety of the release and exculpation provisions. But these statements, and the promise of evidence in the future, fall short of adequate disclosure. The Disclosure Statement is silent as to why the overly broad release and exculpation provisions are integral to the reorganization and as to what specific contributions were made by <u>each</u> of the Released Parties and exculpated parties for the benefit of the releasing parties.

## II. The releases contravene Section 524(e) and Fifth Circuit law.

12. One of the fundamental tenets of bankruptcy law is the granting of a discharge of a corporate debtor's remaining liabilities once creditors are paid in accordance with a reorganization plan. Section 524(e) addresses the scope of a bankruptcy discharge and states, in relevant part, that the "discharge of a debt of the

debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).  The purpose of Section 524(e) is to ensure that the benefits of the bankruptcy laws are afforded only to those who submit to the burdens of the bankruptcy laws.  *See, e.g.*, *In re Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995), cert. denied, 517 U.S. 1243 (1996); *Feld v. Zale Corp.*, 62 F.3d 746 (5th Cir. 1995); *Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992); *In re Western Real Estate Fund*, Inc., 922 F.2d 592, 600 (10th Cir. 1980), modified sub nom., *Abel v. West*, 932 F.2d 898 (10th Cir. 1991).

13. The Fifth Circuit has flatly rejected non-debtor releases because they contravene Section 524(e).  In numerous cases, the Fifth Circuit has made clear that Section 524(e) releases only the debtor, not co-liable third parties, and prohibits non-debtor releases.  *See, e.g., Feld v. Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995) ("Section 524(e) prohibits the discharge of debts of non-debtors"); *Hall v. Natl. Gypsum Co.*, 105 F.3d 225, 229 (5th Cir. 1997), citing *Matter of Edgeworth*, 993 F.2d 51, 53-54 (5th Cir. 1993) (Section 524(e) "specifies that the debt still exists and can be collected from any other entity that might be liable"); *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1061 (5th Cir. 2012) (the Fifth Circuit has "firmly pronounced its opposition to such releases").  In *In re Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009), the Fifth Circuit found that substantial consummation of a confirmed reorganization plan did not equitably moot consideration of non-debtor releases because such releases are "consequential to the integrity and transparency of the Chapter 11 process." *Id.* at 251. The court then proceeded to reaffirm its prior decisions and concluded:

> We find little equitable about protecting the released non-debtors from negligence arising out of the reorganization. In a variety of contexts, this court has held that

>Section 524(e) only releases the debtor, not co-liable third parties. *[citations omitted]*. These cases seem to broadly foreclose non-consensual non-debtor releases and permanent injunctions.

*Id*. at 252.

14. Thus, the Fifth Circuit has rejected the notion that bankruptcy proceedings may discharge the debts or liabilities of parties other than the debtor. On its face, the release provision is contrary to controlling law and constitutes an impermissible violation of Section 524(e).

**III. The release provisions should not be approved as "consensual" because they lack independent consideration and affirmative consent.**

15. Even courts that allow non-debtor releases in limited circumstances generally require that the affected creditors must consent. *See, e.g.*, *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 504-07 (Bankr. D.N.J. 1997). The Commission takes the position that, to be consensual, releases should involve both consideration and affirmative consent. *See id.* at 506 ("Where the creditor consents to the release, and presumably receives consideration in exchange for that agreement, it has not been forced by virtue of the discharge provisions of the code, to accept less than full value for its claim.")

**The Released Parties are not providing separate consideration.**

16. Here, it is not disclosed what, if any, separate consideration is being provided by <u>each</u> of the Released Parties in connection with the release. The Debtors' claims that the Released Parties and the exculpated parties made substantial and valuable contributions are not sufficiently specific with respect to each Released Party and as to what constitutes separate consideration in exchange for the releases. Additionally, the proposed distribution to common shareholders provided the <u>class</u> accepts the Plan is not sufficient consideration for the releases. The proposed distribution is in exchange for

their interest in the Debtors and is in effect a bribe to coerce shareholders to accept the Plan.  And the contingent nature of the distribution means shareholders could receive no consideration at all in connection with the Plan.

      **B.**      **The releases are not consensual.**

    17.    In our view, a release is consensual only when the affected parties are given an opportunity to grant the release separate and apart from voting on the plan by making a specific election on the ballot.  Here, by contrast, creditors and interest holders are required to file an objection expressly objecting to their inclusion as a Releasing Party.

    18.    While the Fifth Circuit has not explicitly determined what constitutes consent, the decision in *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 506-07 (Bankr. D.N.J. 1997) is instructive.  In *Arrowmill*, the court explicitly rejected the position that voting on the plan is sufficient evidence of consent, stating that "it is not enough for a creditor to abstain from voting for a plan, or even simply vote 'yes' as to a plan." *Id. at 506.*  The court found that the validity of releases hinges on contract law rather than the bankruptcy court's confirmation order. *Id.*  Consequently, a court must determine whether the creditor "unambiguously manifested assent to the release of the non-debtor from liability on its debt." *Id at 507.*  *See also In re Congoleum Corp.*, 362 B.R. 167, 194 (Bankr. D. N.J. 2007) (a consensual release "cannot be based solely on a vote in favor of the plan"); *In re AOV Indus.*, 31 B.R. 1005, 1010 (D.D.C. 1983), aff'd in part, 792 F.2d 1140 (D.C. Cir. 1986) (releases not tied to acceptance or rejection of plan were given voluntarily and thus were enforceable).

19. By contrast, the release here is not given voluntarily by individual creditors and interest holders, but rather is imposed upon them through Plan confirmation. Creditors and interest holders are not given an opportunity to make a decision to execute the release separately from voting to accept or reject the Plan; indeed, they are bound by the release unless they file an objection. This places an onerous and unfair burden on parties who may not be represented by counsel and may not have the resources to obtain effective representation, including approximately 16,000 public shareholders, many of whom may be individual shareholders.[5]

### III. The exculpation clause provides impermissible third-party releases.

20. The exculpation clause in the Plan also effectively grants overly broad releases in contravention of Section 524(e) by providing that numerous non-debtor third parties, including the Debtors' former and current officers and directors, shall not be liable with respect to acts taken or omitted in connection with or related to the Chapter 11 cases.

21. Section 1125(e) of the Bankruptcy Code provides a limited safe harbor to non-debtors with respect to the offer or issuance of securities under a plan, provided that such persons acted in good faith and in compliance with the applicable provisions of Title 11. 11 U.S.C. §1125(e). In *Pacific Lumber*, the Fifth Circuit made clear that Section 524(e) prohibits the exoneration of non-debtors, other than official committees and their members acting within the scope of their official duties, from negligence during the course of their participation in the bankruptcy. The court stated: "[T]he essential function of the exculpation clause proposed here is to absolve the released parties from any

---

[5] The Debtors' FORM 10-K for the year ended December 31, 2017, indicates that there are approximately 16,000 beneficial holders

negligent conduct that occurred during the course of the bankruptcy. The fresh start of Section 524(e) provided to debtors is not intended to serve this purpose." *Pacific Lumber*, 584 F.2d at 252.  But the exculpation clause here goes far beyond this safe harbor to encompass virtually all acts or omissions taken in connection with the Chapter 11 cases by current and <u>former</u> members of  thirty-one (31) listed categories of parties to be exculpated, effectively exculpating an unknown number of individuals who may not have any connection to the bankruptcy proceedings.

22. Recently, in an appeal from the bankruptcy court, the District Court for the Northern District of Texas ruled that it was clear error for the bankruptcy court to approve the debtor's exculpation provision, which provided protection for not only the debtor, but current officers, directors, employees, agents, advisors, or affiliates, and any of its professionals. *Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.)*, No. 17 CV 1958, No 17 CV 1959, 2018 U.S. Dist. LEXIS 179769 at 19 (N.D. Tex. Oct. 19, 2018).  The Court agreed with appellant that the debtor's exculpation provision was similar to the exculpation language struck down by the Fifth Circuit in *In re Pacific Lumber*.  *Id.* at 19.  The District Court reversed the bankruptcy court's approval of the exculpation provision and remanded the case with instructions to strike the aspects of the provision concerning the improper release of non-debtor third parties. *Id.* at 19.

23. Here, the Debtors' exculpation provision protecting current and former members of thirty-one (31) categories of parties is significantly more expansive than the exculpation provision criticized by the District Court in *Dropbox*.  Thus, the exculpation clause in the present case contravenes Section 524(e) and applicable Fifth Circuit law to the extent that it exceeds the scope of Section 1125(e).

**CONCLUSION**

24.     WHEREFORE, for the reasons stated above, the Commission respectfully requests that the Court enter an order denying the approval of the Disclosure Statement unless: (i) the release provisions are modified to exclude willful misconduct and gross negligence; (ii) impaired creditors and interest holders will not be bound by the release provisions without their affirmative consent ; (iii) the exculpation clause is revised to be consistent with Fifth Circuit precedent; and (iv) the provision stating that common shareholders will receive nothing if the common shareholder class rejects the Plan is deleted or, in the alternative, common shareholders are carved out of the release.[6]

Dated: January 14, 2019
Chicago, Illinois

/s/ Jolene M. Wise
Jolene M. Wise
(IL. State Bar No. 6200520)
Attorney for the
Securities and Exchange
Commission
175 West Jackson St., Suite 1450
Chicago, Illinois 60604
Telephone: (312) 353-7390
Facsimile: (312)353-7398
Email: wisej@sec.gov

---

[6] The Commission reserves its right to object to the lack of a carveout for the Commission from the non-debtor third-party release provisions if such a carveout is not included in the Plan.

I, Jolene Wise, do hereby certify that a copy of the foregoing OBJECTION OF THE SECURITIES AND EXCHANGE COMMISSION TO APPROVAL OF THE DEBTORS' DISCLOSURE STATEMENT has been served by the Electronic Case Filing System for the Southern District of Texas on this 14th day of January, 2019.

/s/ Jolene M. Wise
Jolene M. Wise